## McGovern et al., Appellants, *v.* Armstrong et al.

*Mandamus—Registration—Supplies—Duty of county commission-ers—Acts of July* 24, 1913, *P. L.* 977, *and April* 21, 1921, *P. L.* 239.

Under section 16 of the Act of July 24, 1913, P. L. 977, as amended by the Act of April 21, 1921, P. L. 239, the county commissioners are obliged to furnish to the registration commissioners, in addition to the supplies mentioned in the act, only such supplies "as are reason-ably necessary" to carry out the provisions of the act.

While a large discretion is vested in the registration commissioners by the Act of 1921, in determining what supplies are to be furnished by the county commissioners, such discretion is not absolute and is therefore subject to review.

Maps of the election district showing buildings, property lines and streets are not specially mentioned in the statute. Books which contain, not only information to registrars, but which are intended to induce a larger registration are similarly not included in the term "necessary supplies."

Argued December 8, 1925.    Appeal No. 76, April T., 1926, by plaintiff, from the order of C. P. Allegheny Co., October T., 1925, No. 972, refusing to award a writ of peremptory mandamus, in the case of Charles C. McGovern, J. Scott Morgan, Ida L. Allen and W. K. Hodgkinson, Constituting the Board of Registra-tion Commissioners of the City of Pittsburgh, Alle-gheny County, Pennsylvania, v. Joseph G. Armstrong, E. V. Babcock and James Houlahen, Constituting the Board of County Commissioners of Allegheny County, Pennsylvania, and Michael J. Verosky, Purchasing Agent of said Board of Commissioners.    Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ.    Affirmed.

Mandamus by the Registration Commissioners of the City of Pittsburgh against the County Commis-sioners of Allegheny County to compel respondents to honor requisitions for supplies.    Before FORD, J.

The facts are stated in the opinion of the Superior Court.

The court refused to award the writ.  Plaintiffs appealed.

*Error assigned* was the order of the court.

*James H. Gray,* and with him *Joseph F. Weis,* for appellant.—Mandamus will lie to compel the performance by public officers of duties purely ministerial in their character:  Dechert v. The Commonwealth, 113 Pa. 229; Kaine v. Commonwealth, 101 Pa. 490; Commonwealth v. James, 135 Pa. 480; Douglas v. McLean, 25 Pa. Superior Ct. 9.

The legislature of Pennsylvania may create an administrative body with discretionary authority to determine facts:  Franklin Film Mfg. Corporation, 253 Pa., 422; Mill Creek Coal Co. v. Curran, 244 Pa., 496; Goldwyn Distributing Corporation, 265 Pa., 335; Plains Township Election Returns, 280 Pa. 520; Cambria County Licenses,. 78 Superior Court, 28; Ben Avon Boro. v. Ohio Valley Water Company, 260 Pa., 289.

*W. Heber Dithrich,* for appellee.

Opinion by Keller, J., February 26, 1926:

The Court of Common Pleas of Allegheny County refused to award a writ of peremptory mandamus against the Board of County Commissioners of that county, directing them to furnish to the Board of Registration Commissioners of the City of Pittsburgh certain printed books and linen maps.

Section 16 of the Act of July 24, 1913, P. L. 977, as amended by the Act of April 21, 1921, P. L. 239 provides, inter alia, as follows:  "The county commissioners of each county,......shall. ... .... at the direction of the [registration][a] commissioners, prepare

---

Note a.   The Act provides (sec. 2), that "commissioners", as used therein, has reference to Registration Commissioners.

and have printed, at the expense of the county, all the registers, street lists, affidavits, blanks, blank books, and stationery required by this act, or which in the judgment of the [registration][a] commissioners, are reasonably necessary to carry out its provisions, and shall provide for their proper distribution to the commissioners and their registrars." The general character of the registers, street lists, affidavits and blanks or blank forms required by the Act is set forth in sections 7, 9, 10 and 14.

The books which the Registration Commissioners called upon the County Commissioners to print and furnish at the expense of the county were not of the character prescribed in those sections. They contained about ninety printed pages and were entitled "Instructions and Reasons Why Those Otherwise Qualified Should Register and Vote." Their contents included not only information as to the candidates to be nominated at the primary election of September 15, 1925, the municipal election of November 3, 1925 and the spring primary of May 18, 1926, with full instructions relative to registering and voting at said elections, and the duties of the registrars and election officers as fixed by law, but also an explanation of the method of electing the President and Vice President of the United States, a statement of the electoral votes by states from 1908 to 1924, a list of all the Presidents and Vice Presidents and when qualified, the popular vote for President by political parties and by states in 1916, the electoral vote for President and Vice President since 1789, and the popular vote since 1828, maps and diagrams showing the representation of the states in the Republican and Democratic National Conventions of 1924, and the popular vote for President for that year, and the registration by wards in the City of Pittsburgh, and other information of a like character. Ten thousand of these books were requisitioned by the Registration Commissioners.

The maps were large maps, to be specially prepared for each separate election district, having indicated thereon the streets and lines of that district and also the buildings erected on the lots abutting on the streets, designating the buildings as of brick, stone, or frame and showing the numbers of the buildings. Each map would be specially prepared and the buildings would have to be designated and their character and numbers marked by hand at considerable expense. The Chairman of the Board of Registration Commissioners estimated that a full set of such maps would cost $15,000, a sum considerably in excess of the funds allotted for all the supplies to be furnished under the Act. The present requisition called for maps for only 150 out of 688 districts. The maps would not be permanent as they would necessarily have to be revised or changed from year to year as the number and character of the buildings in the district changed.

While a large discretion is vested in the registration commissioners by the Act in determining what stationery and supplies are to be furnished by the county commissioners, such judgment or discretion is not absolute. The act itself qualifies them to be such as ''are reasonably necessary to carry out its provisions''. The judgment or discretion of the registration commissioners is therefore subject to review.

It is admitted—the title itself declares it—that the purpose of the book is not merely to give necessary information to registrars as to the workings of the registration and election laws, but also to induce a greater number of citizens to register and vote. However desirable it may be to increase the number of citizens sufficiently interested in their government to vote, that objective is not within the scope of the Act of 1913. The statute is clearly designed to prevent fraudulent and illegal voting. Some of the material in the book would be proper to furnish as a booklet or pamphlet

to the registrars, but the book as a whole is not within the purview of the Act.

As regards the maps, we can appreciate that a large map showing the lines and streets of the district would be a proper and useful equipment for each election district. But maps are not especially mentioned among the supplies required to be furnished by the county commissioners, and it may be doubted whether, strictly speaking, they are included within the term "stationery" as used in the Act. In the absence of a statutory requirement for their furnishing, their necessity must bear some reasonable relation to their cost, and be controlled, in this respect, by the sound discretion of the county commissioners reasonably exercised. That the maps desired are not absolutely essential is apparent from the fact that the requisition affects less than one-fourth of the election districts. The two boards of commissioners should be able to agree upon some larger and better maps than the small ones now furnished, which will be of much benefit to the various registrars and yet not entail an unreasonable expense upon the county because of their temporary and changing character.

On full consideration of the case, we are not convinced that the learned court below erred in refusing the writ.

It may not be improper to state, that under the Act of June 8, 1893, P. L. 346, section 4, the proceeding should have been prosecuted in the name of the Commonwealth, on the relation of the present appellants, instead of by them directly.

The assignments of error are overruled and the judgment of the court below is affirmed.